## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ELTON FERNANDES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-CV-0630-CVE-FHM** |
| | ) | |
| **CITY OF BROKEN ARROW, OKLAHOMA,** | ) | |
| **and CRAIG BROWN, individually and in his** | ) | |
| **official capacity, and MIKE JACKSON,** | ) | |
| **individually and in his official capacity,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss and Memorandum of Law in

Support (Dkt. # 13). Defendants ask the Court to dismiss plaintiff's complaint for failure to state a

claim upon which relief can be granted. Dkt. # 13, at 1. Plaintiff responds that he properly pled all

claims, and, alternatively, asks the Court for leave to amend his complaint. Dkt. # 20.

## I.

This case arises out of the alleged illegal search of plaintiff's automobile and home and his

subsequent arrest and prosecution for knowingly and intentionally possessing with intent to

distribute AB-FUBINACA and XLR11. Dkt. # 1, at 3-5. Plaintiff alleges that on the morning of

October 7, 2014, six to eight officers were conducting surveillance of his residence. Plaintiff asserts

that at approximately 11:11 a.m., defendant Mike Jackson notified defendant Craig Brown that

plaintiff had carried a white plastic bag from his residence to his vehicle and was driving toward

Brown. Id. at 3. Plaintiff asserts that Jackson and Brown were working in dual capacities on October

7, 2016, as officers of the Broken Arrow Police Department (BAPD) and as members of a Drug

Enforcement Agency (DEA) task force. Id. at 2. Plaintiff alleges that Brown saw plaintiff fail to signal a turn and initiated a traffic stop. Id. at 3. Plaintiff asserts that, after providing his license and registration, Brown began questioning plaintiff and never told plaintiff he was free to leave. Id. During the questioning, plaintiff asserts that he was outside his vehicle, flanked by Brown and Jackson with two uniformed officers standing ten to twelve feet behind them, and that three law enforcement vehicles with their lights flashing were parked immediately behind him. Id. Plaintiff alleges that Brown asked him if there was anything illegal in the car, and that after plaintiff told him there was nothing illegal in the car, Brown searched the vehicle without consent. Id. Brown found a white bag containing approximately 100 foil packages labeled "King Kong" under the front passenger seat of plaintiff's vehicle. Id. Plaintiff asserts that Jackson searched plaintiff's person and retrieved $3,000 in cash. Id. at 3-4. Plaintiff alleges that he was released after the search because the officers did not have the equipment needed to test whether the packages contained contraband. Id. at 4.

Plaintiff further alleges that Brown and as many as four BAPD officers entered plaintiff's residence before obtaining a warrant and without the consent of plaintiff's wife, Vallery Soares, who was the only adult at the home. Id. Plaintiff asserts that the officers looked around the home, and when Soares asked them to leave, the officers responded that at least two of them had to stay in the home with her. Id. Plaintiff alleges that the officers stayed in the home until the warrant was issued. Id. Plaintiff alleges that after the search warrant for plaintiff's home was served and contraband was seized from the residence, Brown and Jackson arrested plaintiff. Id. A grand jury returned a two-count indictment against plaintiff, charging him with the knowing and intentional possession with intent to distribute of AB-FUBINACA and XLR-11, both Schedule I controlled substances, in

violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). Id.; see also Indictment, United States v. Fernandes, No. 15-CR-0185-JED (N.D. Okla. Dec. 7, 2015).

On February 12, 2016, Judge John E. Dowdell granted plaintiff's motion to suppress the evidence seized as part of the search of plaintiff's vehicle and the search of plaintiff's home. Dkt. # 1, at 5; see also United States v. Fernandes, 161 F. Supp. 3d 1081 (N.D. Okla. 2016). The Court found (1) that although the traffic stop was initially justified, the officers did not have reasonable suspicion to continue detaining plaintiff after completing the traffic stop; (2) that the extension of the traffic stop was not consensual; and (3) that plaintiff did not consent to the search of his vehicle. Fernandes, 1090-93. Therefore, the Court granted plaintiff's motion to suppress evidence obtained during the traffic stop. Id. at 1093. Because the evidence acquired during the traffic stop would be suppressed, the Court also found there was not probable cause to obtain a warrant for the search of plaintiff's home. Id. Additionally, the Court found that the officers did not act in good faith reliance on a warrant because they entered the home before the search warrant was issued. Id. at 1093-94. Thus, the Court granted plaintiff's motion to suppress the evidence obtained from his home. Id. at 1094. After the Court's suppression ruling, the United States dismissed the case against plaintiff. Dkt. # 1, at 6.

On October 6, 2016, plaintiff brought this suit against the City of Broken Arrow; Brown, individually and in his official capacity; and Jackson, individually and in his official capacity. Id. Plaintiff asserts claims against Brown and Jackson under 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and alleges that he is entitled to punitive damages from Brown and Jackson. Dkt. # 1, at 6-9. Plaintiff also asserts a

municipal liability claim against Broken Arrow under 42 U.S.C. § 1983. Id. at 9-11. Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. # 13.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

Defendants ask the Court to dismiss the complaint, arguing (1) that the § 1983 claims against Brown and Jackson should be dismissed because they were acting under color of federal, not state, law; (2) that the official capacity claims against Brown and Jackson should be dismissed because they are redundant; (3) that plaintiff's cause of action for punitive damages is impermissible; (4) that Brown and Jackson are entitled to qualified immunity because there are no actionable constitutional violations in this case; and (5) that plaintiff has failed to plead sufficient facts to support its municipal liability claim. Dkt. # 13. The Court will address each of defendants' arguments in turn.

**A.**

Defendants argue that the § 1983 claims against Brown and Jackson should be dismissed because they were acting under color of federal, not state law. Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). In Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922 (1982), the Supreme Court held that if the conduct at issue constitutes "state action," then it is "also action under color of state law and will support a suit under § 1983." 457 U.S. at 935. "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,'

and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" West, 487 U.S. at 49 (quoting Lugar, 457 U.S. at 937) (alteration in original).

Plaintiff alleges that Brown and Jackson were acting in "dual capacities," as members of the DEA task force and the BAPD, and that they were therefore acting under color of state law and color of federal law. Dkt. # 1, at 2, 6; Dkt. # 20, at 8. However, plaintiff has cited no authority for his proposition that an individual can act under color of state and federal law simultaneously, and the Court has found no precedent to support plaintiff's position. To act under color of a government's law is to exercise power possessed by virtue of that law and made possible only because the actor is clothed with the government's authority. See West, 487 U.S. at 49. Although Brown and Jackson may have been able to exercise either state or federal authority by virtue of their status as BAPD officers who have been deputized as members of the DEA task force, they may not exercise state and federal authority simultaneously. In other words, Brown and Jackson may act overall as dual agents, but their actions in any particular case are made pursuant to, and possible by, the authority of the state or federal government. Further, the Court's finding that Brown and Jackson could not, as a matter of law, have been acting under color of both state and federal law comports with other federal courts who have treated local officers assigned to federal task forces as acting either under color of state law or color of federal law. See, e.g., Guerrero v. Scarazzini, 274 F. App'x 11, 12 n.1 (2d Cir. 2008); Majors v. City of Clarksville, 113 F. App'x 659, 659 (6th Cir. 2004); Pike v. United States, 868 F. Supp. 2d 667, 677-78 (M.D. Tenn. 2012); Bordeaux v. Lynch, 958 F. Supp. 77, 84 & n.5 (N.D.N.Y. 1997); Pou v. U.S. D.E.A., 923 F. Supp. 573, 579 (S.D.N.Y. 1996); Amoakohene v. Bobko, 792 F. Supp. 605, 608 (N.D. Ill. 1992).

Plaintiff may plead inconsistent, alternative claims under Rule 8(d)(2) of the Federal Rules of Civil Procedure. Thus, at this stage, plaintiff may assert that Brown and Jackson were acting under color of state law to support a § 1983 claim and that Brown and Jackson were acting under color of federal law to support a <u>Bivens</u> claim. However, to survive a 12(b)(6) motion to dismiss, plaintiff must plead sufficient facts to support each claim. Here, plaintiff has failed to state a § 1983 claim against Brown and Jackson because plaintiff has failed to allege facts sufficient to support that Brown and Jackson were acting under color of state law.

Plaintiff alleges that Brown and Jackson were members of the BAPD and were deputized members of the DEA task force. Dkt. # 1, at 2. Although plaintiff's complaint is not entirely clear, construing the complaint in the light most favorable to plaintiff, plaintiff alleges that Brown and Jackson were conducting surveillance on plaintiff as members of the DEA task force, and that the six to eight officers involved in the events at issue other than Brown and Jackson were BAPD officers that were not members of the DEA task force. Further, plaintiff asserts that Brown and Jackson were acting as BAPD supervising officers when they were organizing, directing, and supervising the actions of the non-task-force-member officers. <u>See</u> <u>id.</u> at 2, 6-7.

In <u>United States v. Martin</u>, 163 F.3d 1212 (10th Cir. 1998), the Tenth Circuit held that a local police detective who had been deputized to assist a federal investigation was a federal officer for the purposes of 18 U.S.C. § 115 (threatening to "assault, kidnap, or murder . . . a Federal law enforcement officer"). <u>See</u> 163 F.3d at 1215. The Tenth Circuit reasoned that the "dispositive factors" were the officer's assistance to federal agents and his federal deputation, not the source of his salary. <u>Id.</u> Although <u>Martin</u> relied on an interpretation of § 115, courts that have dealt with local officers deputized as members of federal task forces have concluded that such officers are acting

under color of federal law under the same reasoning as in Martin. See, e.g., Guerrero, 274 F. App'x 11, 12 n.1 (noting that because the defendant officers were deputized members of a DEA task force, plaintiff's claim was properly brought as a Bivens action); Majors, 113 F. App'x at 659 (interpreting a plaintiff's § 1983 claim against local officers acting as DEA task force agents as a Bivens claim); Pike, 868 F. Supp. 2d at 677 (holding that plaintiff's § 1983 claims against local officers assisting in a federal task force operation were "plainly Bivens claims"); Bordeaux, 958 F. Supp. at 84 (holding that local officers assigned to DEA task force could not be sued under § 1983 because they were federal officers); Amoakohene, 792 F. Supp. at 608 (holding that local officers arresting someone for a municipal code violation incident to activities in connection with a DEA task force, of which the officers were members, did not act under color of state law). Thus, under the reasoning of Martin, the Court finds that a local police officer acting as a member of a DEA task force is a federal officer.

Based on plaintiff's allegations that Brown and Jackson were acting as members of the DEA task force, they were acting as federal officers. However, that is not the end of the Court's inquiry. A federal officer can, in some cases, act under color of state law for § 1983 purposes. Big Cats of Serenity Springs, Inc. v. Rhodes, 843 F.3d 853, 869 (10th Cir. 2016). Plaintiff argues that the actions as issue were a "joint venture" between state and federal officers, which would subject the federal officers to liability under § 1983. Dkt. # 20, at 9. Federal officers can act under color of state law when they "conspire with state officials to infringe a protected constitutional right." Big Cats, 843 F.3d at 869 (citing Martinez v. Winner, 771 F.2d 424, 441 (10th Cir. 1985)). "[C]onspiracy with state actors is a requirement to finding that federal actors jointly acted under color of state law." Id. (citing Strickland ex rel. Strickland v. Shalala, 123 F.3d 863, 866-67 (6th Cir. 1997)). Thus, to allege

that a federal officer acted under color of state law, the complaint must allege: "(1) an agreement between two or more persons, with (2) an intent to achieve an unlawful act." Id. Here, plaintiff does not allege that Brown and Jackson conspired with the BAPD officers, but that they directed them. See Dkt. # 1, at 2, 4. Consequently, plaintiff has failed to allege facts sufficient to support a claim that Brown and Jackson acted under color of state law because they were involved in a joint operation with state actors. For the reasons above, plaintiff has failed to state a § 1983 claim against Brown and Jackson.

## B.

Defendants argue that the claims against Brown and Jackson in their official capacities should be dismissed because they are redundant. Plaintiff asserts that he is alleging only a § 1983 claim against Brown and Jackson in their official capacities, not a Bivens claim.[1] See Dkt. # 20, at 6, 11. Suing an individual defendant in his or her official capacity under § 1983 "is essentially another way of pleading an action against the county or municipality they represent." Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010). "[I]f a governmental entity is already a defendant in a lawsuit, then any official capacity claims against its employees are redundant and may be dismissed." Moore v. Tulsa, 55 F. Supp. 3d 1337, 1349 (N.D. Okla. 2014). Plaintiff has brought a § 1983 claim against Broken Arrow; thus, the claims against Brown and Jackson in their official capacities are redundant and should be dismissed.

## C.

---

[1]      A plaintiff cannot bring a Bivens suit against a defendant in his or her official capacity. Farmer v. Perrill, 275 F.3d 958, 963 (10th Cir. 2001) ("There is no such animal as a Bivens suit against a public official tortfeasor in his or her official capacity.").

Defendants argue that plaintiff's claim for punitive damages is impermissible and should be dismissed. "A punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case." Mason v. Texaco, Inc., 948 F.2d 1546, 1554 (10th Cir. 1991). Plaintiff's separate claim for punitive damages should therefore be dismissed.

## D.

Defendants argue that Brown and Jackson are entitled to qualified immunity because there are no actionable constitutional violations in this case. "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir. 2003) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)) (internal quotation marks omitted). Qualified immunity represents the "best attainable accommodation of competing values," namely the need to allow plaintiffs vindication for constitutional violations by government officials and the need to preclude costly and time-consuming litigation of meritless issues. Harlow v. Fitzgerald, 457 U.S. 800, 813-14 (1982).

> Determining whether a defendant is entitled to qualified immunity involves answering two questions: (1) whether a plaintiff has asserted that the defendant violated a constitutional or statutory right, and if she has, (2) "whether that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right."

Keylon v. City of Albuquerque, 535 F.3d 1210, 1218 (10th Cir. 2008) (quoting Maestas, 351 F.3d at 1007).

Plaintiff argues that, under the doctrine of collateral estoppel, the Court's findings in plaintiff's criminal case that his Fourth Amendment rights were violated preclude defendants from

arguing that no constitutional violation occurred. Dkt. # 20, at 16. Four elements must be met before collateral estoppel will bar a claim:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Moss v. Kopp, 559 F.3d 1155, 1161 (10th Cir. 2009). None of the defendants was a party in plaintiff's criminal case. Thus, collateral estoppel cannot be invoked against them unless they were in privity with the United States. Privity is not easily definable, but it "requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." Pelt v. Utah, 539 F.3d 1271, 1281 (10th Cir. 2008). The Tenth Circuit has clearly held that no privity exists between the prosecution in a criminal case and the officers in a subsequent civil suit. Novitsky v. City of Aurora, 491 F.3d 1244, 1252 n.2 (10th Cir. 2007) ("As we have previously made clear, a court's conclusion during a criminal prosecution that a law enforcement officer's conduct was unconstitutional is not afforded collateral estoppel effect in a subsequent civil case against the officer because there is no privity between the prosecution in the criminal case and the officer.") (citing Morgan v. Gertz, 166 F.3d 1307, 1309 (10th Cir. 1999); Kinslow v. Ratzlaff, 158 F.3d 1104, 1105-07 & n.3 (10th Cir. 1998)). Thus, collateral estoppel will not be applied in this case, and plaintiff must establish anew that defendants violated his constitutional rights.

Plaintiff alleges that Brown and Jackson violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution. Dkt. # 1, at 8. Plaintiff's allegations of Brown and Jackson's constitutional violations fall into four broad categories: (1) the detention of plaintiff

during the traffic stop; (2) the search of plaintiff's vehicle; (3) the search of plaintiff's home; and (4) plaintiff's arrest and prosecution. Defendants assert that plaintiff failed to allege facts sufficient to establish any constitutional violation.

### i.

Plaintiff alleges that the traffic stop violated the Fourth and Fourteenth Amendments by exceeding the scope of the initially lawful stop. Dkt. # 1, at 3. The Fourth Amendment secures the right of the people to be free from unreasonable searches and seizures. The basic purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Mun. Court, 387 U.S. 523, 528 (1967). "[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment." Id.

To determine the constitutionality of a traffic stop under the Fourth Amendment, courts apply the "reasonable suspicion" standard originally set forth by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Winder, 557 F.3d 1129, 1133 (10th Cir. 2009). Terry set out a two-part inquiry: (1) whether the stop was "justified at its inception," and (2) if the stop was initially justified, whether "the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place." Id. at 1133-34 (quoting United States v. Valenzuela, 494 F.3d 886, 888 (10th Cir. 2007)). Here, the first prong of Terry is not at issue; plaintiff admits that the initial stop was justified by plaintiff's turn signal violation. Dkt. # 1, at 3. Plaintiff argues that the stop violated the Fourth Amendment because it exceeded the scope of the purpose of the stop.

12

A traffic stop may generally last no longer than is necessary to effectuate the purpose of the stop. United States v. Cervine, 347 F.3d 865, 870-71 (10th Cir. 2003). "Under ordinary circumstances, this limits the officer to a request for the driver's license and registration, a computer check on the car and driver, an inquiry about the driver's travel plans, and the issuance of a citation." Id. at 871. An officer may extend a traffic stop for reasons unrelated to the initial stop under two circumstances: "(1) the officer has an objectively reasonably and articulable suspicion that illegal activity has occurred or is occurring; or (2) if the initial detention has become a consensual encounter." Id. A traffic stop becomes a consensual encounter once an officer returns the driver's documentation and a reasonable person under the circumstances would believe he or she was "free to leave or disregard the officer's request for information." United States v. Bradford, 423 F.3d 1149, 1158 (10th Cir. 2005). Whether a traffic stop is consensual requires a court to consider the totality of the circumstances surrounding the encounter, but the Tenth Circuit has identified a number of factors that suggest an encounter was not consensual, including:

> the "threatening presence of several officers," the "use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory," the "prolonged retention of a person's personal effects such as identification," the "absence of other members of the public," and the officer's failure to advise the defendant that [he] is free to leave.

United States v. Ledesma, 447 F.3d 1307, 1314 (10th Cir. 2006).

Nothing in plaintiff's complaint would support finding that Brown and Jackson had a reasonable articulable suspicion that illegal activity had occurred or was occurring. Moreover, assuming the facts pled by plaintiff, the traffic stop was not consensual. Plaintiff alleges that he was outside his car and flanked by Brown and Jackson with two uniformed officers standing ten to twelve feet behind them. Dkt. # 1, at 3. Further, plaintiff asserts that three law enforcement vehicles

13

were parked immediately behind him with their lights flashing. Id. Plaintiff's allegations show that after plaintiff's documentation was returned to him, there was a coercive show of authority that rendered the encounter non-consensual. Therefore, plaintiff has alleged sufficient facts to state a claim for violation of the Fourth Amendment as to the traffic stop.

## ii.

Plaintiff alleges that the search of his vehicle violated the Fourth and Fourteenth Amendments. Dkt. # 1, at 3. "'If there is probable cause to believe a vehicle contains evidence of criminal activity,' the warrant requirement does not apply to 'a search of any area of the vehicle in which the evidence might be found.'" United States v. Polly, 630 F.3d 991, 999 (10th Cir. 2011) (quoting Arizona v. Gant, 556 U.S. 332, 347 (2009)). Nothing in plaintiff's complaint would support finding that Brown and Jackson had probable cause to believe plaintiff's vehicle contained evidence of criminal activity. Additionally, plaintiff asserts that he did not consent to the search. Defendants argue that there was no Fourth Amendment violation because the search was "de minimis." In support of their argument, defendants misconstrue Parker v. Strong, 717 F. Supp. 767 (W.D. Okla. 1989). The only search at issue in Parker was a search of the plaintiff's person incident to arrest. See Parker, 717 F. Supp. at 769. Thus, Parker is entirely inapplicable to this case.[2] Plaintiff alleges that

---

[2]     Defendants also argue that the search of plaintiff's vehicle and the search of plaintiff's home did not violate plaintiff's constitutional rights because the searches were carried out "without any physical harm or injury to Plaintiff or his family and uncovered illegal drugs and guns." Dkt. # 13, at 11. This argument seems to be based on a fictional Fourth Amendment standard. The constitutional standard for searches is not, and has never been, whether contraband was found as a result of the search.

Brown and Parker searched his vehicle without probable cause or consent; plaintiff's allegations clearly state a violation of his Fourth Amendment rights.

### iii.

Plaintiff alleges that the search of his home violated his Fourth and Fourteenth Amendment rights. Dkt. # 1, at 4. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980); see also United States v. Najar, 451 F.3d 710, 713 (10th Cir. 2006). Plaintiff alleges that Brown and up to four BAPD officers entered and searched his home hours before a warrant was obtained. Dkt. # 1, at 4. Plaintiff asserts that Soares asked the officers to leave, that no exigent circumstances existed, and that the officers did not act in a reasonable good faith reliance on a warrant. Id. Assuming the facts plaintiff alleges, the search of his home would have clearly violated plaintiff's Fourth Amendment rights.

### iv.

Plaintiff asserts that his arrest and prosecution violated his Fourth and Fourteenth Amendment rights. To determine the contours of a § 1983 or Bivens claim, courts look to common-law torts as analogies. Myers v. Koopman, 738 F.3d 1190, 1194 (10th Cir. 2013). Although not explicit in the complaint, plaintiff's allegations regarding his arrest and prosecution align best with a claim of malicious prosecution.[3] Plaintiff claims that Brown and Jackson unlawfully detained him and "malicious[ly] plac[ed] charges against him." Dkt. # 1, at 6. However, plaintiff does not plead any facts to support his conclusory allegations. He asserts that Brown and Jackson arrested him

---

[3] Plaintiff's claim is not a false imprisonment claim because he was subjected to legal process. See Wallace v. Kato, 549 U.S. 384, 389-90 (2007).

based on the searches, but he does not allege that Brown and Jackson falsified evidence, lied to obtain an arrest warrant or to convince prosecutors to charge plaintiff, or committed any other offense separate from the previously discussed searches. Thus, plaintiff has failed to allege facts sufficient to support a claim that Brown and Jackson violated plaintiff's constitutional rights through malicious prosecution.

<strong>v.</strong>

As discussed above, plaintiff has properly pled a <u>Bivens</u> suit against Brown and Jackson, alleging that they of violated plaintiff's Fourth and Fourteenth Amendment rights during the traffic stop, search of plaintiff's vehicle, and search of plaintiff's home. Defendants have not argued that Brown and Jackson are entitled to qualified immunity on the basis that they did not violate "clearly established law." However, the Court finds that, accepting plaintiff's allegations as true, Brown and Jackson would have violated clearly established law. It has long been clearly established that officers may not search a home without a warrant or a specific exception to the warrant requirement. <u>See, e.g.</u>, <u>Mincey v. Arizona</u>, 437 U.S. 385, 393-94 (1978) ("[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.") (citing <u>McDonald v. United States</u>, 335 U.S. 451, 456 (1948); <u>Johnson v. United States</u>, 333 U.S. 10, 14-15 (1948)). Similarly, a warrantless search of an automobile without probable cause or consent has long been a clear violation of the Fourth Amendment. <u>See, e.g.</u>, <u>Almeida-Sanchez v. United States</u>, 413 U.S. 266, 269 (1973) ("Automobile or no automobile, there must be probable cause for the search."). Further, the Tenth Circuit has continuously held that in the

16

absence of objectively reasonable and articulable suspicion, to extend a traffic stop beyond its initial purpose requires the encounter to be consensual, and a "coercive show of authority, such as the presence of more than one officer," renders an encounter nonconsensual. United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991). Thus, Brown and Jackson and not entitled to qualified immunity.

### E.

Defendants final argument is that plaintiff has failed to plead sufficient facts to support his municipal liability claim. To state a § 1983 claim against a municipal entity, "a plaintiff must show (1) the existence of municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged." Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010) (quoting Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993)).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions–and the basis for them–of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

Id. (citing Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotation marks omitted) (alteration in original). A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Barney v. Pulsipher, 143 F.3d

1299, 1307 (10th Cir. 1998) (quoting <u>Bd. of the Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997)).

Plaintiff alleges that "Broken Arrow, Jackson, and Brown promulgated, created[,] implemented, supervised, and/or possessed responsibility for enforcing" the following: (1) "Officers utilizing so-called protective sweeps of private premises as a method of obtaining entry into a residence prior to actually obtaining a warrant and without the specific knowledge that a warrant will actually be obtained"; (2) "The practice of 'scattering' throughout a property during these 'protective sweeps' in an effort to 'plainly view' evidence before legally obtaining a lawful search warrant to enter property; (3) "Deploying large groups of backup officers to traffic stop scenes in an effort to overcome any hesitation for providing consent to search by impliedly threatening and/or coercing traffic stop detainees. . . ."; (4) "Not documenting alleged 'side of the road' consents supposedly given to officers"; (5) "Officers providing or omitting skewed or distorted facts to obtain search warrants"; (6) "Officers ignoring direct refusals of consent to search by traffic stop detainees"; and (7) "Supervisors directing uniformed officers in their testimony to support supervisors' perjury." Dkt. # 1, at 9-10. Plaintiff also alleges that BAPD failed to train its officers in "the proper way to approach a motorist to obtain uncoerced consent to search, when it is legal to enter residences[,] and . . . what information validly forms the basis [of] a search warrant," and that these deficiencies in training caused plaintiff's rights to violated. <u>Id.</u> at 11.

First, the Court notes that a determination that Brown and Jackson were not acting under color of state law is not dispositive of the municipal liability claim against Broken Arrow. Plaintiff must show that a municipal policy or custom is "the moving force behind the constitutional violation," <u>see</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989), but Broken Arrow "itself is the

state actor 'and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983.'" Bladdick v. Pour, 833 F. Supp. 2d 1032, 1039 (S.D. Ill. 2011) (quoting Gibson v. City of Chicago, 910 F.2d 1510, 1519 (7th Cir. 1990)). Plaintiff alleges that Brown and Jackson are BAPD officers and Broken Arrow is responsible for their training. Dkt. # 1, at 10. Assuming plaintiff's allegations are true that there are flaws and/or omissions in the BAPD training that caused Brown and Jackson to violate plaintiff's constitutional rights, Broken Arrow would liable under § 1983 regardless of what authority under which Brown and Jackson acted at the time of the violations.

Plaintiff has alleged numerous, specific policies or customs that could plausibly have caused the violation of his rights. However, plaintiff's allegations are not adequately formed to state a claim of municipal liability based on policy or custom. Plaintiff has not alleged that these are formal policies, widespread customs, or the result of a policymaker's decision or ratification of a subordinate's decision. It appears that plaintiff is asserting municipal liability based on the decisions of a policymaker. However, plaintiff attributes the policies to "Broken Arrow, Jackson, and Brown," but none of these is a policymaker. A municipal official must have final policymaking authority in order for his or her actions to subject the government to § 1983 liability. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1998). Broken Arrow itself is not a municipal official, and plaintiff has not alleged facts to establish that either Brown or Jackson have final policymaking authority. Thus, plaintiff has failed to state a municipal liability claim against Broken Arrow based on a custom or policy.

On the other hand, plaintiff has stated a claim for municipal liability based on failure to train. Plaintiff alleges that BAPD failed to adequately train its officers in obtaining consent during traffic

stops, conducting searches, and obtaining warrants. Plaintiff also asserts that the failure to properly train BAPD officers caused his alleged constitutional violations, and the need for such training is obvious. Defendants argue that <u>Lopez v. LeMaster</u>, 172 F.3d 756 (10th Cir. 1999), and <u>Mocek v. City of Albuquerque</u>, 813 F.3d 912 (10th Cir. 2015), compel dismissal of plaintiff's failure to train claim. However, <u>Lopez</u> involved a motion for summary judgment, <u>Lopez</u>, 172 F.3d at 758, and the plaintiff in <u>Mocek</u> alleged merely that the municipality had "fail[ed] to train its employees properly, <u>Mocek</u>, 813 F.3d at 934. Plaintiff's allegations against Broken Arrow for its failure to train its officers is not robust, but plaintiff has certainly alleged more than a general failure to properly train. Plaintiff has alleged deficiencies in BAPD training specific enough to put Broken Arrow on notice of the claim against it and show that the allegations could plausibly have caused the alleged violations of plaintiff's constitutional rights. Therefore, at this point in the litigation, plaintiff has done enough to state a claim for municipal liability under § 1983 for failure to train.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss and Memorandum of Law in Support (Dkt. # 13) is **granted in part and denied in part**. It is granted as to plaintiff's claims against Craig Brown and Mike Jackson in their official capacities, plaintiff's claims against Craig Brown and Mike Jackson under 42 U.S.C. § 1983, plaintiff's claim for punitive damages, and plaintiff's claim against the City of Broken of Arrow under 42 U.S.C. § 1983 based on a custom or policy; it is denied as to plaintiff's claims against Craig Brown and Mike Jackson under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and plaintiff's claim against the City of Broken Arrow under 42 U.S.C. § 1983 based on a failure to train.

**IT IS FURTHER ORDERED** that plaintiff may file an amended complaint, consistent with the rulings herein, no later than **February 17, 2017**.

**DATED** this 3rd day of February, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE